Acosta et al., Demandantes y Apelantes, *v.* Porto Rico Telephone Company, Demandada y Apelada.

Apelación procedente de la Corte de Distrito de Mayagüez en pleito sobre cumplimiento de contrato y daños y perjuicios.

No. 2115.—Resuelto en enero 24, 1921.

Arrendamiento—Rescisión Automática del Arrendamiento—Devolución de la Finca Arrendada—Fuerza Mayor.—Cuando la cosa se destruye o pierde sin culpa del arrendatario, el derecho por parte de éste a la rescisión debe regirse por los principios generales que regulan la rescisión de los contratos. Así, pues, cuando la casa arrendada se hace inhabitable debido a fuerza mayor, el arrendatario puede abandonarla y negarse a pagar el canon, especialmente si notifica debidamente al arrendador, sin que venga obligado a establecer previamente la acción rescisoria.

Id.—Evidencia Inadmisible—Fotografías.—La fotografía de un edificio pre-

sentada con el fin de probar que las paredes del mismo no están desaplomadas, sin más demostración por parte del que la presenta, no es admisible en evidencia.

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. B. Forés.*

Abogados de la apelada: *Sres. Charles Hartzell* y *F. Ramírez de Arellano.*

El Juez Asociado Sr. Wolf, emitió la opinión del tribunal.

Magdalena Acosta Forés era dueña de una casa de mampostería de dos pisos en la calle de la Luna de San Germán. Ella alquiló el segundo piso de ésta casa a la South Porto Rico Telephone Company, que tuvo como sucesora a la Porto Rico Telephone Company. El término del arrendamiento vencía en 31 de mayo de 1924.

Como resultado de los temblores de octubre 11 de 1918, y de noviembre 12 del mismo año y debido a la actitud o a los actos de varias autoridades y a la de su mismo empleado, la compañía demandada creyó que tenía derecho a abandonar la casa y considerar rescindido el contrato de arrendamiento. La arrendadora, alegando que la casa no se encontraba en ruinas ni había quedado inhabitable a causa de los temblores, estableció esta acción para obligar a la demandada a seguir el contrato, o pagar a la demandante la suma de $1,320 que ella calculaba como daños y perjuicios.

La acción en manera alguna es para el pago de rentas debidas o vencidas. La cuestión litigiosa puede decirse que giró únicamente sobre el punto de si la casa estaba o no en ruinas, o si había quedado inhabitable. La corte de distrito declaró que debido a los temblores de octubre 11 y noviembre 12 de 1918, la casa quedó tan agrietada, desaplomada y prácticamente arruinada, que el arrendatario tuvo que abandonarla por ser inaplicable al uso a que se destinaba y que este abandono de la casa fué ordenado y aconsejado por el alcalde de la ciudad de San Germán y el Sub-Comisionado del Interior. En vista de estos hechos la corte llegó a la

conclusión de que si una cosa es destruída o perjudicada en tal forma que el arrendatario no pueda disfrutar o usar de la misma, entonces el contrato queda automáticamente rescindido; que quedó probado que el edificio sufrió averías de tal magnitud, que se hacía imposible seguir utilizándola para el objeto requerido y aún cuando hubiera sido posible repararlo nunca hubiera sido el mismo edificio que se arrendó, pués no podía ofrecer las mismas garantías y seguridad; que dada la naturaleza del servicio telefónico no sería posible abandonar temporalmente el edificio para volverlo a utilizar a los tres o cuatro meses, pues hubiera sido necesario suspender el servicio público por tiempo indefinido con gran perjuicio para la compañía de teléfonos y para el público en general; que la corte no creyó necesario en un caso de esta naturaleza de un procedimiento judicial previo para rescindir un contrato de arrendamiento; que no se trataba de una rescisión por razones normales, o de conveniencia o de perjuicios para una o ambas partes, sino de la destrucción súbita de la cosa arrendada y por tanto no sería materialmente posible iniciar un procedimiento de rescisión en circunstancias tan anormales.

Interpuesta apelación contra dicha sentencia varios errores han sido alegados. Por conveniencia en el desarrollo de éstos, discutiremos primero la cuestión de si era necesario para la arrendataria iniciar una acción para rescindir el contrato de arrendamiento. Los artículos del Código Civil que cita la apelante en apoyo de su contención de que tal acción era necesaria, son los siguiente:

"Artículo 1457.—El arrendador está obligado:

"1. A entregar al arrendatario la cosa objeto del contrato.

"2. A hacer en ella durante el arrendamiento todas las reparaciones necesarias a fin de conservarla en estado de servir para el uso a que ha sido destinada.

"3. A mantener al arrendatario en el goce pacífico del arrendamiento por todo el tiempo del contrato."

"Artículo 1459.—Si el arrendador o arrendatario no cumplieren las obligaciones expresadas en los artículos anteriores podrán pedir la rescisión del contrato y la indemnización de daños y perjuicios, o sólo esto último, dejando el contrato subsistente."

"Artículo 1461.—Si durante el arrendamiento es necesario hacer alguna reparación urgente en la cosa arrendada que no pueda diferirse hasta la conclusión del arriendo, tiene el arrendatario obligación de tolerar la obra, aunque le sea muy molesta, y aunque durante ella se vea privado de una parte de la finca.

"Si la reparación dura más de cuarenta días, debe disminuirse el precio del arriendo a proporción del tiempo y de la parte de la finca de que el arrendatario se vea privado.

"Si la obra es de tal naturaleza que hace inhabitable la parte que el arrendatario y su familia necesitan para su habitación, puede éste rescindir el contrato."

Indudablemente que aunque no lo expresan terminántemente, estos artículos indican que en algunos de los casos a que se refieren, la intención de establecer una acción y en cierto modo los comentaristas y los casos se pronuncian en el mismo sentido. Manresa, tomo 10, página 553; Scaevola, tomo 24 *passim; Henry Rose Mercantile & Manufacturing Company* v. *Smith,* 139 La. 224, y casos citados en el mismo. ¿Es imperativa tal acción por parte del arrendatario, o tiene éste un privilegio? ¿Comprende la necesidad o el privilegio todos los casos? Una cosa deberá observarse inmediatamente, o sea, que estos artículos tienen por objeto que el arrendatario pueda quedar y quede en posesión de la propiedad arrendada. Estos artículos suponen previamente la continuación del arrendamiento y la acción que corresponde al arrendatario es rescindir el contrato por haber dejado de cumplir el arrendador con uno de los requisitos de dicho arrendamiento. Pero si la cosa arrendada ha sido destruída o se hace inhabitable, no vemos nada en el código que haga imperativo establecer una acción de rescisión. El artículo 1459 demuestra que si el arrendador no cumpliere con las condiciones del arrendamiento el arrendatario podrá pedir

la rescisión, pero el artículo 1461 prescribe al final que el arrendatario puede rescindir el contrato; asimismo los artículos 1150 y 1152 del Código Civil prescriben lo siguiente:

"Artículo 1150.—Quedará extinguida la obligación que consista en entregar una cosa determinada, cuando ésta se perdiere o destruyere sin culpa del deudor y antes de haberse éste constituído en mora."

"Artículo 1152.—También quedará liberado el deudor en las obligaciones de hacer cuando la prestación resultare legal o físicamente imposible. * * * "

En otras palabras, cuando la cosa se destruyere o perdiere sin culpa del arrendatario, el derecho a la rescisión por parte del arrendatario deberá estar regulado por los principios generales que regulan la rescisión de los contratos. Rescisión quiere decir una medida activa por parte del arrendatario pero ésta puede meramente consistir en el aviso al arrendador y probablemente en el abandono de la propiedad. Cuando la cosa se hace inhabitable y el arrendatario en manera alguna puede disfrutar de ella creemos que podrá abandonarla y negarse a pagar el precio del arrendamiento, especialmente si notifica debidamente al arrendador como se hizo en este caso.

El artículo 1261 del Código Civil en el capítulo relativo a la rescisión de los contratos, prescribe lo siguiente:

"Artículo 1261.—La acción de rescisión es subsidiaria; no podrá ejercitarse sino cuando el perjudicado carezca de todo otro recurso legal para obtener la reparación del perjuicio."

De modo que el mismo código tiene en cuenta otras medidas además del pleito.

Asimismo y aparentemente donde rige la ley civil, como en Louisiana, el arrendatario puede, en casos como éste, oponerse a la acción para el cobro de los cánones de arrendamiento. *Denman* v. *López*, 12 La. Ann. 823.

Manresa discute la obligación que tiene el arrendador de reparar la finca arrendada, en sus comentarios al artículo

1554 del Código Civil, equivalente al 1457 de nuestro código, en la forma siguiente:

"Esta cuestión fué ya discutida por los jurisconsultos franceses. De una parte Troplong, fundándose en la obligación que al arrendador incumbe de hacer las reparaciones, dice en substancia, que toda reparación sea cual fuere su entidad, debe ser llevada a cabo por él. El arrendador debe mantener la cosa en estado tal que sirva para el uso a que se le destina; luego todo desperfecto, grande o pequeño, provenga de caso *fortuito* o de cualquier otro motivo, debe ser reparado. La consecuencia de este modo de pensar es que si la cosa ha sido destruída, debe el arrendador reconstruirla.

"Nada más violento que esta manera de considerar la cuestión: no se puede exigir al propietario que arrienda su finca que tenga un capital de reserva para llevar a cabo la reconstrucción de la misma, si por un accidente cualquiera se derrumba, ni que lo busque en condiciones ruinosas. Precisamente para llegar a una fórmula de harmonía en ese supuesto es para lo que el proyecto de 1851 estableció la regla del artículo 1487, distinguiendo entre la destrucción total que rescinde el contrato y la parcial que faculta al arrendador para optar entre la rescisión o la rebaja proporcional del precio.

\*        \*        \*        \*        \*        \*        \*

"Para el caso de destrucción de la cosa no hay un precepto especial en el código, salvo el del artículo 1568; sin duda ha sido su propósito el dejar la solución sometida a los principios generales que rigen las obligaciones, como más adelante veremos. Según estos principios, la pérdida de la cosa (y eso viene a ser su destrucción) extingue las obligaciones que con motivo de ella se crearen. No hay, a nuestro juicio, otra solución posible dentro del código. Manresa, Código Civil Español, Vol. 10, pp. 520, 521." Véase también el caso de *Henry Rose Manufacturing Co.* v. *Smith,* 139 La., 224.

Ahora bien, si el arrendador puede considerar el contrato como rescindido y negarse simplemente a proceder, el mismo derecho recíproco para oponerse al pago es inherente en el arrendatario cuando la cosa ha sido destruída.

Además, en este caso la arrendadora, debida o indebidamente, ha llevado forzosamente al arrendatario a la corte; y suponiendo que proceda una acción de la clase invocada,

es imposible admitir que lo que el arrendador pide a la corte que declare existente el arrendatario no debe oponerse o defender por el fundamento de ser inexistente por razón de lo que ha sucedido. Suponiendo, entonces, que la acción proceda, todo el derecho del arrendador a obtener una sentencia contra el arrendatario gira alrededor del punto de si la cosa arrendada quedó o no inhabitable o inservible para su ocupación. La mayor parte de los otros errores alegados por los apelantes, todos sin un señalamiento específico de errores, giran alrededor de esta cuestión.

La corte tenía derecho a suponer de la prueba en conjunto que la casa era inhabitable o inservible, lo que consideramos que en la mayoría de los casos son términos equivalentes. Pero hay algo más. La casa fué arrendada primitivamente a una compañía de teléfonos. Hubo prueba tendente a demostrar que era una compañía corriente de servicios telefónicos con un sistema de teléfonos públicos y a larga distancia. Además de esto, dos o más de las jóvenes vivían en la casa. El alcalde de la ciudad aconsejó a estas jóvenes que abandonaran la casa debido al peligro originado por los temblores.

Es verdad que la dueña de la casa ofreció hacer reparaciones después del primer temblor y que el superintendente de la compañía de teléfonos manifestó que debían aplazarse las reparaciones, pero la corte tenía derecho a creer, aún cuando hubiera prueba directa en contrario, cosa que no aparece de los autos, que la condición física quedó mucho peor y el daño era mucho mayor debido a las repetidas sacudidas, de modo que si existía alguna obligación por parte de la arrendadora, la que, como hemos visto, niegan las mejores autoridades, esa obligación no quedó afectada por la actitud del superintendente. En verdad que su actitud no podía producir efecto de acuerdo con la ley porque cuando existe la obligación de hacer reparaciones, entonces por virtud del artículo 1461 del Código Civil el arrendatario está obligado

a tolerar las reparaciones. Decíamos que esta era una compañía de teléfonos con un servicio completo. La corte declaró probado y hubo prueba tendente a demostrar que sería necesario cambiar toda la instalación a otro edificio y entonces volverla a traer, operación que sería muy costosa, según declaró el superintendente. Los autos tienden a mostrar que tal traslado era indispensable y no vemos que la apelante ni siquiera niegue estos hechos. Sus testigos declaran en el sentido de demostrar que trabajando fuerte de día y de noche las reparaciones podrían hacerse en menos de un mes y medio, que era el límite de tiempo fijado por el perito Blas Silva, pero la corte tenía derecho a dar por sentado, que para las reparaciones se necesitarían tres o cuatro meses, tomando en consideración la opinión de los peritos en ese sentido. Todos sabemos por experiencia que cuando se necesitan materiales, y especialmente ahora, el cálculo mayor, por lo general, no es demasiado exagerado. Haciéndose estas reparaciones era imposible que la compañía permaneciera en el edificio.

Es verdad, como alega la apelante que las autoridades no dijeron que la casa estaba en condiciones ruinosas. Llegamos a la conclusión de que el edificio quedó hecho inhabitable porque la obra que el arrendador ofreció hacer equivaldría a una reconstrucción y no a meras reparaciones, y esta conclusión está sostenida por Manresa, *supra, Viterbo* v. *Friedlander,* 120 U. S. 707, y *Henry Rose Manufacturing Company* v. *Smith,* 139 La. 224, *supra.* También opinamos que debido a ser el negocio del arrendatario el de una compañía de teléfonos, no podía continuar su servicio allí mientras el edificio se encontraba en condiciones peligrosas aún cuando este temor hasta cierto punto no fuera exagerado. Llegamos además a la conclusión, de que para hacerse las reparaciones que el arrendador ofreció hacer sería necesario para la compañía de teléfonos mudarse del edificio para esperar la terminación de las reparaciones y entonces volverse

a mudar, lo que por sí supone un estado inhabitable del edificio.

Para sostener las conclusiones de hecho a que hemos llegado tenemos un record incompleto de la prueba. La prueba documental jamás fué certificada por el juez, sino meramente adicionada a la transcripción y no tenemos facultades para considerarla. Parte de ella se refería a los avisos enviados por el alcalde; parte a la correspondencia de las partes. En una página el alcalde aparece aconsejando a las jóvenes que permanecieran en el edificio y el contexto es convincente de que él les aconsejó que se mudaran, estando omitida la palabra "no." Hay innumerables palabras mal deletreadas, cuyo significado correcto tiene que ser adivinado. La declaración de Blas Silva, como ha sido transcrita, a veces es tan poco clara que nos deja en duda respecto a si fué fielmente reproducida en la exposición del caso. Como toda la prueba no está debidamente ante nos y existen numerosas omisiones y errores, la presunción a favor de las conclusiones de la corte podría ser refutada, de serlo, sólo con gran dificultad.

También hemos asumido que la arrendadora tenía una causa de acción en este caso si en verdad la casa era habitable, pero si su reclamación estaba bien fundada entonces el arrendamiento existía y ella solamente tenía derecho a la renta vencida, de la cual, según parece, en la fecha en que el pleito fué establecido no había vencido un mes completo. No siendo la acción en cobro de rentas, no había causa de acción. Aún cuando parte de las rentas se debiera, como necesariamente era menos de $500, la Corte de Distrito de Mayagüez carecía de jurisdicción.

Hubo otro error alegado en cuanto a la negativa de la corte a admitir fotografías. Como el único propósito era probar que no se podía notar que el edificio estaba desaplomado, creemos que la corte estuvo enteramente justificada al resolver, sin más demostración por parte del apelante,

que una fotografía no podría servir para ese fin, puesto que el ángulo de observación establecería una diferencia radical.

La sentencia apelada debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro y Aldrey.

El Juez Asociado Sr. Hutchison firmó conforme con la sentencia.